oral argument not to exceed 15 minutes for the plaintiff, 15 minutes to be shared by the defendants. Mary Carolyn Hyatt for the appellant, you may proceed. May it please the court, I'm Carolyn Hyatt and along with Al Gerhardstein, we represent the plaintiff, Marcus Newell. I would like to reserve three minutes. Our plaintiff, Mr. Newell, was shot by a Henry County special deputy while that deputy was participating in a firearms course at a shooting range as required by his position. As a result of that special deputy's recklessness, Marcus suffered excruciating pain in his liver, kidney and lungs were damaged and his spleen had to be removed. Plaintiff has brought state law and constitutional claims against that special deputy and against Henry County, his employer. The only two issues currently before this court are one, whether the trier of fact could find that defendant Huepenbecker was acting in the scope of his employment and two, whether he was acting under color of law. As an employee of Henry County, special deputy Huepenbecker had certain duties and responsibilities. Was he paid by Henry County? Was Huepenbecker paid by Henry County? He was not. But the definition of employee in the statute specifically includes unpaid employees. And did you say he was required to undergo that training? Yes. Was he required to undergo that training as a special deputy or in order to be eligible to become a deputy? In the facts of this case, actually both. But he was required as a special deputy under his current position. The special deputy policy for Henry County is 3.02, which is... ...or anybody in the sheriff's office to take that particular course from that particular institution at the time he enrolled. He was required to take an OPATA certification course to... So your answer is no? Not at that particular institution, no. Thank you. ...and not under specific instruction of anybody in the sheriff's office? It was under the specific instruction to be enrolled and in good standing or to have completed... So the answer is yes or no? I think it was under specific instruction, just not for that particular time at that institution. Is there summary judgment evidence of any person in the sheriff's office who directed him specifically to take this course at that time? At the time of within one year? At the time he enrolled, yeah. It's not a hard question. It's either yes or no. Do you have any evidence? Any evidence? So did he notify anybody at the sheriff's department that on today I'm going to be taking this training at X institution between the hours of 8 and 4 or whatever it was? Is that the kind of notification or designation to which you're referring? He did not notify them with that specificity. He testified, and that is on the record that he notified the sheriff that he was taking the course, but he did not provide the level of detail that it was at this date and this time, but he was not requested that information. The requirement was to take the course and to become certified. So what's the closest Ohio case that would say what he was doing was in the scope of his employment or whatever? Actually, the Ohio Supreme Court case that the district court order cited to Rogers, I think, actually very clearly shows why this actually was in the scope of employment. That case, the district court says that that case requires that it was under the direction of the county, and so because no one was there at the course watching over him, he wasn't in the scope of employment. But the case, the Supreme Court of Ohio actually explicitly says in that case that it doesn't mean that you're watching over someone's shoulder. What they say is that it must be under the direction and control of the employer such that if he failed to comply, he could be penalized. And what the sheriff has testified to, and which is on the record, is that he was required to take this course and that if he didn't become certified, that he could no longer be a special deputy. And termination from his position is obviously the ultimate. If I'm a state employee and I'm doing something that's required by my job, something that would be required like getting a degree, getting CLE, getting whatever it is, whatever job I have, anything I do in connection with that training or whatever would be in the scope of my employment. Like any tort that I commit, like if I'm an attorney, I go to a CLE, I trip and fall and hit somebody on the way down, that's within the course and scope. Well, what the Ohio Supreme Court says is that this is a very fact-specific inquiry that should go to the trier of fact to be decided. What they've said is that there's never been found to be any rule that as a matter of law, you're out of the scope of employment when you're obtaining training, education, or any other off-duty requirement. So that's the sort of thing that needs to be heard by a jury. And I think there are a lot of reasons that the jury could distinguish between this case and some of those other examples, getting a bachelor's degree or the other example that the court raised below was requiring to exercise regularly. And I think the difference here is that this course isn't like any other college course. This course comes with unique and necessary risk, and that risk is exactly what happened here, that there would be an accidental shooting. So if the county is going to require that its employees take on this risk, then it should also protect them from that risk, and that includes indemnifying them. Okay, and I want to go back to the employee-employer relationship. Tell me again, what is it about this case that makes your client an employee of the sheriff's? If I would not understand that there were two classes of special deputies, or at least two classes, and that there are certainly things that people have to do if they ever want to get into law enforcement, but as you just admitted to Judge Nalvandian, the preparation that one takes doesn't necessarily, even if it's required, doesn't necessarily bring them within the ambit of an employee. So is it the uniform? What is it that made Mr. Newell an employee at the time this event occurred? 2744.01 defines an employee as an officer, whether or not compensated, or full-time, or part-time. He, Devin Huebenbecker, was appointed to the position of a special deputy by the sheriff, following an application and approval process. He then worked several shifts as a special deputy, providing security for the county. And after the shooting, he was terminated from that position. So during that period, he had an employment relationship. The important question then is whether he was in the scope of that employment at this time. And under the holding of the Ohio Supreme Court, if you're acting under the direction of your employer, and you could be penalized for failing to follow that direction, then that's in the scope of employment, or at least not as a matter of law outside of the scope of employment, which means that a prior effect deserves to hear this and decide if they think he really was in the scope of employment. But you agree that, I mean, it's like any other case. You can have summary judgment, right? It's like any other fact case. If there's not enough evidence or it's undisputed, summary judgment is appropriate, right? If it were undisputed and if there were no facts that a jury could rely on to find that he was not in the scope of his employment, that would be true. But because there are facts, most importantly the testimony of the sheriff himself. But it's not unique, right? I mean, this case is not unique in that sense, is it? You're suggesting that just every case where I raise the scope of employment goes to a jury. I mean, that can't be right, right? If there are facts that the jury could rely on to find that he was acting at the direction of the employer, then it should. But that might not be there. That's what we have here. Okay. No Ohio court has ever said that this is outside of the scope of employment as a matter of law. If we were to craft that rule now, that would actually be to change the Ohio state law that's at issue here. They've repeated quite forcefully that this is very fact-specific. They've declined to even define it very concretely because they want the jury to have that opportunity. Is that a substantive state law issue or is that just a question of we apply our Rule 56, they apply their Rule 56? I mean, under ERIE, we're not bound by if they call something that's always a fact question, that's not substantive, is it? I'm sorry. I don't know what you mean. Don't worry about it. So you're saying that you should prevail because you say that there is a question and that within these facts, there is a question, a genuine question, and that genuine question defeats summary judgment? Yes. Okay. Can I ask you the question? So the indemnity, would that apply to the state and the federal claims? In other words, it would apply to the 1983 claim and any state tort claim? I believe so. Okay. But, of course, for the constitutional claims, there are other barriers in terms of immunity that would also need to be addressed. However, for the same reasons – But if you proved that he – in other words, if you proved that there was a violation under color of law under 1983 by the individual and you had the indemnity, you wouldn't need to prove Monell liability in order to collect money from the county? Correct. Okay. The issue – the other issue before us now, though, is also whether he was acting under color of law, and for the same reasons that he was acting within the scope of his employment, we could find that he was under color of law. The rule is most clearly described pertaining to the facts that we have here in Stengel v. Belcher, where the police officer at issue was off duty, not in his uniform, did not invoke his position, but intervened in a bar fight. And despite being off duty, not in his uniform, not even invoking his position, I'm a police officer, stop, didn't do anything. But the chief of police testified that he was required to intervene. That requirement to act makes it under color of law, even if it isn't within the scope of employment, even if it isn't – Are you familiar with the Morris case that was decided by this court about a month before you filed your reply brief? Morris. It involved a police officer wearing a badge, wearing a gun, wearing her handcuffs, getting into a physical altercation, and this court found, even though the officer was under duty, on duty, he was trying to collect a personal debt, so he was not acting under – or the deputy, she was not acting under color of law when she beat up on the person she was trying to – sounds kind of familiar to me. I see that my time's up, but if you'd like me to – You may answer. I think what that goes to is the point that this is so fact-specific and that the focus is on the nature of the act. So even in that case, it does have a lot of the things you would usually look to from your description that she was on duty, but they looked at the fact that she was not, in fact, doing those duties. She was doing something else. So that's why this is fact-specific and why summary judgment is inappropriate at this time. Thank you. Any further questions for Judge Morris? There's no band-aid? Thank you. You'll have your full rebuttal time. Good morning. May it please the Court. My name is D.J. Young. I'm attorney for Casey Huppenbecker. He is the person who is accused of shooting the plaintiff in this case. My client's interest in this hearing is that one of the decisions the judge made was that my client was manifestly outside the scope of employment, and if my client was manifestly outside the scope of employment as opposed to just merely outside the scope of employment, he's not entitled to immunity under state law, and he's not entitled to a defense under state law, and my client's position is he is immune, and he is entitled to a defense because he was acting not manifestly outside the scope of employment. We think he was inside the scope of employment. We've argued that, but very definitely, if he's at a required police officer training course and he's a police officer, he's doing what he's required to do to keep his job. He's surely not manifestly outside the scope of employment. So was he directed to take that training from that provider at that time? I think he was not specifically directed to take it from that provider, but OPOTA training is required, and he was directed by policy to take that, so he took it. Why he chose that particular vendor of the program, I don't know. Did Henry County officials know that he was in that training at that time? I don't believe they knew that he was there in that particular time. Does that affect the scope issue if the county had no knowledge that he was doing this? Had they had knowledge he was going to be doing it, perhaps there were things that they would routinely do. I don't know. I think it's a legitimate question. I think a jury would have to sort that out, because there are a lot of jobs in this world where the boss does not know exactly where the employee is or what the employee is doing at any given day or given time, yet the employee is required to comply with these provisions of the job. Did Henry County provide that OPOTA-certified training? The state of Ohio provides the OPOTA certification. Okay, but this was not an Ohio training facility, was it? It's a vendor of the Ohio training program. Actually, it was a state community college. All right. Thank you. So if we should affirm the court and you go back to the state court, you're saying that this manifest holding of the district court is going to bar your claim of immunity? Well, Your Honor, I'm not sure. I do fully intend to ask for, if this goes to a state court, to ask the trial court to reconsider the district court's ruling on this point, because I think it's just wrong on the issue of manifest. Well, the state court wouldn't be bound by anything we did anyway in a diversity case, would it? I would agree, but I don't want a problem, Your Honor. So it would be great if this court would at least say he was not manifestly outside the scope. I'm sorry. I missed that on your brief. The benefit of the position that my client has— Would it be preclusive? Wouldn't it be issue preclusion? That is a concern. Final judgment and— It might be, Your Honor. I don't know, and I don't want to— I mean, I intend to litigate those points at the trial court, wherever it is when we get there. But it would be easier if I didn't have to. So if the position— Think on it. Yeah, so if this court follows my line of thinking, that doesn't make the state of Ohio liable for this accident, and it doesn't give the plaintiff relief, but it does give my client the benefit of the immunity statute, which is designed to protect employees of the state of Ohio who are in situations that aren't exactly black and white as a matter of law. And that was clearly the situation my client found himself in, and it's unfortunate that he has no defense, no coverage, no insurance, nothing because of this. But he would, if this court were to rule that the lower court was wrong in the holding of not manifestly outside the scope of— Is the manifest—I'm trying to remember. Is it both the duty to defend—one is different than the other, the duty to defend and the indemnity, right? The indemnity is different. He has to be within the scope of employment for indemnity. That's why I say you could find that there's a duty to defend without the defendant ever being liable in this case in the end. So my time is up, Your Honors. Is there something else, Judge? Something else? Thank you, Your Honors. Thank you, sir. Good morning, Your Honors. I'm Teresa Grigsby. I'm here for Henry County. I do not represent the state of Ohio. On just three occasions during the summer of 2015, Casey Huppenbecker went into the community to help the Henry County Sheriff's Auxiliary provide security at community events. Seven months later, unbeknownst to the Henry County Sheriff's Office, unbeknownst to the Sheriff, unbeknownst to the Auxiliary, he was enrolled at Northwest State Community College to take a police academy training course that anybody could sign up to take. But was it—but it was required that he take the course, wasn't it? The evidence is certainly not clear that he was required to take the course. The Sheriff did testify that he would not allow special deputies to remain special deputies if they didn't ultimately become certified. Okay, so we're on summary judgment, so we have to assume he was required to do that, right? Yes, but even assuming so, even assuming so, the requirement to take a single class at an unspecified time, at an unspecified place, with unspecified instructors, is simply too remote to be considered to be within the scope of employment. All tort liability is bounded by concepts of foreseeability because only if a risk is foreseeable can you take appropriate actions to manage that risk, to recognize that risk. And in this situation, we have a circumstance in which Henry County had no idea that Casey Hoopenbecker was at the city of Napoleon gun range taking a class offered by Northwest State Community College. It's an interesting argument. I don't remember seeing it in the cases, like approximate cause. It is not specifically spoken to in the case law that I've seen, but I do think that when you analyze the case, any case, any scope of employment case, because it's a tort concept, that that issue has to be considered because otherwise there's no way to manage risk. And especially so under these circumstances in which we're talking about a statutory obligation to defend and or indemnify set forth in Chapter 2744 of the Ohio Revised Code. That chapter as a whole was adopted to limit public entity liability and risk. And it does it in a number of ways. For example, it creates immunities in certain sections of Chapter 2744. It creates damages caps and set offs elsewhere in 2744. Why wouldn't it be under your own analysis, you're saying, okay, we assume that the course is required. And as your opponent rightly points out, it's a risky venture, right, which involves guns, it's at a gun range. So why wouldn't it be foreseeable that something might happen where somebody has to take the course at some point to maintain their employment? I mean, doesn't that all just fall in line? Or should we just give it to a jury to decide? I don't think you should give it to a jury because this case is unlike, is like every other case. This is not a unique field of law. And the facts here are undisputed with respect to the major issues involved here. And, in fact, this court has determined scope of employment issues as a matter of law on summary judgment in other cases. So that issue is, I don't think, a concern. But your other point, which is, isn't this the kind of thing that could be foreseen if this indeed is a requirement, which I challenge. But if this indeed is a requirement, the answer is still no. Because if you do not know where the student is taking the class, the employee slash student is taking the class, who's offering the class, what the qualifications of the trainers are, what the circumstances, the training curriculum is, then there's no way to manage that risk. And so, therefore, the concept of scope of employment cannot be read so broadly as to include any kind of educational training that an individual might be required to obtain to maintain a position. And here, in fact, this is not, to address Judge Donald's concerns earlier, there is more that is required to be an employee of Henry County, even the Henry County Special Deputy Auxiliary, under the statute, than obtaining this certification. They have to also be acting within the scope of employment. And they also have to be, under the definition, acting for the political subdivision. That is within the language of 2744.01, the definition of employee. Under these circumstances, the individual was not acting for the Henry County Auxiliary, but if he is, for lack of a better word, patrolling certain events and assisting in crowd control or whatever at these public events, you know, wearing the uniform and all, isn't that acting in behest of the community? And if he has to get this training in order to keep doing that work, why wouldn't that be acting for the community? Well, I would argue, Your Honor, that they're two different things. Actually being within the field, performing the function of a special deputy is one thing. Being in a private training event where you are not providing security for members of the community at the county fair is another thing. But you're doing the training so that you can do that other thing. You're doing the training to remain on a roster, but you're never required to show up at any of these events. And you're never paid by Henry County. You're paid by the organizations that, for instance, the school wants a uniformed officer at the basketball game. They pay the auxiliary who then pays the individual special deputy. But it's the sheriff that fired him, right? The sheriff... Not the auxiliary? The sheriff had issued and signed a commission for him, as he does for all special deputies. But the sheriff did not do anything other than that. And he did terminate that commission when the shooting occurred. Because obviously if someone is careless enough to allow this shooting to occur, you don't even want him out wearing a uniform at the county fair. But the sheriff exercises control over who's a special... He has ultimate authority to reject or approve who the auxiliary recommends be given these special deputy positions. And do these special deputies wear the same color uniform as... It is not in the record, Your Honor. It's just not in the record. So our position is that Casey could have shot Marcus Newell even if he had not been a special deputy. He was in equal position of any other student at that training to have the other student manipulated their gun dangerously as he did, committed that act. And this goes to the issue as well. I mean, obviously it's relevant with respect to the matter of defense and indemnity, but it's also relevant with respect to the 1983 claim. Because under the 1983 claim, he has to be acting under color of state law. And that generally requires that his acts be fairly attributed to the state, the political subdivision, that he manifest his authority in some way. And in this case, there was absolutely no manifestation of authority related on the day of the shooting. In fact, because he lacked authority as a certified law enforcement officer was the whole reason that he was taking the training. There was no manifestation of Henry County authority when this shooting occurred, and he did not abuse the authority of his office, which is the hallmark of color of state law. There was nothing about his position as a special deputy that put him in a position to commit this shooting. Anybody could have committed that shooting. Any of the non-special deputy students who were enrolled in that class. So I do want to take a moment to address, if there are no specific questions, but address the Harrison case, which is the case that plaintiff relies upon or Mr. Newell relies upon extensively with their arguments. Because that is the argument, or that is the case that they offer for the argument that, well, if it partially benefits yourself and partially benefits the employer, then that should be considered an action taken within scope of employment. And what I want to stress is that in that case, the Supreme Court of Ohio was considering an insurance policy issued to the city of Wapakoneta. And it was the city's position that that policy, that insurance policy, should cover acts of a police chief, which were sexual harassment type acts. And the Supreme Court of Ohio made two important points. The first was that, well, here, this individual could be insured under the terms of the policy because these acts occurred by a supervisor on duty in the office, an individual who had authority to hire and fire and that kind of thing. So that could be considered, under the facts of that case, a circumstance in which there would be an insured under the definition of the policy. Moreover, there was a special endorsement in that policy that created extremely broad coverage under the terms of that policy, which is nothing like the language that we're dealing with in 2744. And the final point I'd want to make about the Harrison case is that it was an interpretation of an insurance policy, which generally are interpreted in favor of the insured because they are drafted by the insurance company. This case involves defense and indemnity under 2744.07 in the context of an overall statutory scheme that is intended to conserve the resources of the political subdivision in general. So I see my time's about up, unless there are other questions. I just wanted to go back and ask you one other question. When these special deputies are doing their job at these public places, do they hold themselves out as a division of the law enforcement unit? They're in a uniform. They have a badge. I mean, are they representing themselves to the public as associated with the Sheriff's Department? I think they do because they're alongside these special deputies. The unarmed special deputies cannot do anything outside the presence of a certified law enforcement officer. One question since you're done with your argument. What kind of a firearm did he have? It was a personally owned Glock. I cannot... No, it's a semi-automatic pistol. That exhausts my knowledge of firearms, Your Honor. And do you know whether with his service in Iraq he carried a handgun? I believe his testimony... I don't think his testimony goes so far as to describe the nature of the firearm he carried when he was in military service, but he did indicate that he was trained to use firearms in the military service. Anything else? Thank you. Thank you. We're ready for your rebuttal, Ms. Hyatt. Thank you. I just want to take just a moment to direct the court to its responsibility here. The only thing that we have to do is figure out what the county required and if he was acting in the scope of his employment. The court doesn't have any need to decide if the sheriff was defining duties and responsibilities for his special deputies in the right way or the way that we would want to. He has complete discretion, and all the parties are in agreement, that it's the sheriff that has the discretion here. The employment relationship with the Henry County Auxiliary is not relevant. The potential employment relationship that might have existed in the future should... Is there any evidence that the sheriff had indicated to Mr. Eugen Becker that upon completion of this course, you're hired? No. Which isn't relevant for the employment relationship he had as a special deputy, which is the only one that matters for whether he was in the scope of that employment at the time of the shooting. There is... There is no need to show any manifestation of the authority of the county to be under color of law or within the scope of employment. In Stengel, he specifically did not manifest any authority, didn't say he was a police officer, wasn't in his uniform. There, the important thing was the requirement. Most cases address that manifestation of authority, because most of them are harder than this. Under color of law is potentially broader than the scope of employment. They could be under color of law outside of the scope of employment because they took advantage and abused their position of authority. And it's really important that we want government officials to be liable in that kind of situation. But that's not what this is. This is much more straightforward. What were his duties and responsibilities? And that's all we need to do. And all a jury would need to find that he was within the scope of his employment is to credit the testimony of the sheriff himself, who is the man with the discretion to make these decisions. Because there are those facts that they could rely on to find that Heubenbecker was acting in the scope of his employment because he was acting at the direction of the sheriff. This court should find that he was not manifestly outside of his employment, should find that he was under color of law because he was required to act, and should allow this case to proceed to a jury to decide that he was actually in the scope of his employment as intended by Revised Code 2744, which intends to set up a situation in which they can get a defense from their employer and then indemnity will be decided on the facts at trial. Thank you. Thank you. We thank you for your argument. The matter is submitted and we will issue an opinion in due course.